UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

JOHN P. SERRA, II,                )
                                  )
              Plaintiff,          )     CIVIL ACTION NO.
                                  )     11-11843-DPW
v.                                )
                                  )
QUANTUM SERVICING CORP.;          )
EQUIFIRST CORPORATION;            )
WELLS FARGO BANK, N.A.,           )
TRUSTEE FOR RMAC PASS-THROUGH     )
TRUST SERIES 2010-A,              )
                                  )
              Defendants.         )

MEMORANDUM AND ORDER
August 15, 2012

     Plaintiff John P. Serra, II, filed this suit against

Defendants Quantum Servicing Corporation; Equifirst Corporation;

and Wells Fargo Bank, N.A., Trustee for RMAC Pass-Through Trust

Series 2010-A, alleging misconduct relating to a mortgage secured

by real property in Bellingham, Massachusetts.  Wells Fargo

responded with counterclaims alleging breach of contract, unjust

enrichment, and a valid foreclosure; it requested a deficiency

judgment as well as possession of the property.  Quantum and

Wells Fargo have moved for summary judgment on all claims and

counterclaims.  While I will grant the defendant's motion for the

most part, there are several loose threads to be attended to

before judgment disposing of this case may be entered.

## I.   BACKGROUND

### A.   *Factual Background*

On May 2, 2007, John P. Serra, II, executed a promissory note in the amount of two hundred and seventy six thousand, two hundred and fifty dollars ($276,250.00) to EquiFirst Corporation. The note was secured by a mortgage on the property at 61 Scott Hill Boulevard, Bellingham, Massachusetts ("the Property").  The mortgage identified the "Lender" as Equifirst Corporation.  It stated that Mortgage Electronic Registration Systems, Inc. ("MERS"), "a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns" was "the mortgagee under this Security Instrument."

The Norfolk County Registry of Deeds reflects a series of assignments of the mortgage.  The first two assignments are dated April 7, 2009.  One assigned the mortgage from MERS, as nominee for Equifirst Corporation, to Barclays Bank PLC.  The second assigned the mortgage from Barclays Bank PLC to Sutton Funding, LLC.

A Complaint to Foreclose Mortgage was filed in the Land Court on March 31, 2009, on behalf of Sutton Funding, LLC, requesting a judgment that Serra was not entitled to the benefits of the Servicemembers Civil Relief Act.  On May 26, 2009, the Order of Notice was published, served, and recorded.  Judgment issued on October 15, 2009.

A third assignment dated November 25, 2009, transferred the mortgage from Sutton Funding, LLC, to Quantum Servicing Corp ("Quantum").  On December 9, 2009, Quantum sent a Notice of Intent to Foreclose Mortgage and Pursue Deficiency After Foreclosure of Mortgage to Serra at the Property.  Quantum then caused the Notice of Mortgagee's Sale of Real Estate to be published in the Milford Daily News on December 10, 2009; December 17, 2009; and December 24, 2009, announcing a foreclosure auction of the Property on January 6, 2010.

On January 4, 2010, Serra filed for bankruptcy under Chapter 13 of the United States Bankruptcy Code; the cases were docketed as Case No. 10-10033 and Case No. 10-40060.  The foreclosure sale scheduled for January 6, 2010, was canceled.  The bankruptcy cases were thereafter closed.  Case No. 10-10033 was closed on January 7, 2010, because Serra had a prior bankruptcy case.  Case No. 10-40060 was dismissed on May 10, 2010, because Serra failed to submit an amended Chapter 13 Plan.

On June 1, 2010, Quantum sent a Notice of Intent to Foreclose Mortgage and Pursue Deficiency After Foreclosure of Mortgage to Serra at the Property.  Quantum then caused the Notice of Mortgagee's Sale of Real Estate to be published in the Milford Daily News on June 3, 2010; June 10, 2010; and June 17, 2010, announcing a foreclosure auction of the Property on June 28, 2010.

On June 28, 2010, Serra again filed for bankruptcy under Chapter 13 of the United States Bankruptcy Code; the cases were docketed as Case No. 10-16986 and Case No. 10-43313.  The foreclosure sale scheduled for June 28, 2010, was canceled.  The bankruptcy cases were thereafter closed.  Case No. 10-16986 was closed on June 30, 2010, because Serra had a prior bankruptcy case.  Case No. 10-43313 was dismissed on August 17, 2010, because Serra failed to submit required documents in a timely manner.

On September 8, 2010, Quantum sent a Notice of Intent to Foreclose Mortgage and Pursue Deficiency After Foreclosure of Mortgage to Serra at the Property.  Quantum then caused the Notice of Mortgagee's Sale of Real Estate to be published in the Milford Daily News on September 8, 2010; September 15, 2010; and September 22, 2010, announcing a foreclosure auction of the Property on October 4, 2010.

On October 1, 2010, Serra again filed for bankruptcy under Chapter 13 of the United States Bankruptcy Code; this case was docketed as Case No. 10-20856.  The foreclosure sale scheduled for October 4, 2010, was canceled.  The bankruptcy case was thereafter closed on November 8, 2010, because Serra failed to comply with a court order to file missing documents.

Serra's counsel sent Quantum's counsel a letter dated October 25, 2010.  The letter informed Quantum that Serra was:

4

> exercising his extended right to rescind pursuant to
> MCCCDA . . . . because the disclosed finance charge was
> understated beyond any tolerance permitted by law, as
> certain closing costs--including but not necessarily limited
> to a "credit report fee"--were not bona fide or reasonable
> and thus should have been, but were not, included in the
> disclosed finance charge.

In a letter dated November 17, 2010, Quantum's counsel
acknowledged receipt of the October 25, 2010, letter and
requested that Serra's counsel "provide the documentation on
which [he] relied to request Quantum to rescind the loan
obligation."

A fourth assignment dated June 1, 2011, transferred the
mortgage from Quantum to Wells Fargo Bank, N.A., not in its
individual capacity but solely as Trustee for RMAC Pass-Through
Trust, Series 2010-A ("Wells Fargo").  On August 15, 2011, Wells
Fargo sent a Notice of Intent to Foreclose Mortgage and Pursue
Deficiency After Foreclosure of Mortgage to Serra at the
Property.  Wells Fargo then caused the Notice of Mortgagee's Sale
of Real Estate to be published in the Milford Daily News on
August 16, 2011; August 23, 2011; and August 30, 2011, announcing
a foreclosure auction of the Property on September 13, 2011.

On September 12, 2011, Serra again filed for bankruptcy
under Chapter 13 of the United States Bankruptcy Code; the case
was docketed as Case No. 11-18688.  The foreclosure sale
scheduled for September 13, 2011, was postponed to October 28,
2011.  The foreclosure sale was subsequently postponed a second

time to November 11, 2011, and a third time to December 7, 2011.

On December 7, 2011, a foreclosure auction was conducted. Wells Fargo purchased the property for $191,000.00.  As of that date, Serra's total debt was $260,632.10.  Wells Fargo additionally states that as of that date it had spent $14,914.37 on attorney fees and foreclosure costs as well as approximately $11,000.00 on litigation fees and costs.

On February 23, 2012, Wells Fargo caused a foreclosure deed to be filed at the Norfolk County Registry of Deeds.  The foreclosure deed was executed on January 26, 2012, and transferred the property to Wells Fargo for $191,000.00.  On March 12, 2012, Wells Fargo sent Serra a three-day notice to quit.

**B.   *Procedural Background***

On March 4, 2011, Serra filed this case at the Norfolk County Superior Court.  Quantum, Equifirst, and John Does 1-5 were named as the Defendants.  Equifirst and John Does 1-5 were subsequently dismissed from the case without prejudice for lack of timely service.

On October 14, 2011, Serra filed an Amended Complaint against Quantum, Equifirst,[1] and Wells Fargo.  Serra brought

---

[1]  Although Equifirst is named in the Amended Complaint, none of the counts requested relief with respect to Equifirst, and it does not appear from the docket that Equifirst has been served with the Amended Complaint.

wrongful foreclosure and G.L. c. 93A claims against both Quantum
and Wells Fargo.  Serra additionally requested declaratory and
equitable relief with respect to both Quantum and Wells Fargo,
alleging that the loan was structurally unfair in violation of
G.L. c. 93A and that the lender failed to comply with the
provisions of 209 CMR 32.02 *et seq*.  Finally, Serra requested
judgment rescinding the mortgage transaction pursuant to G.L. c.
140D.

Quantum and Wells Fargo removed the case to this Court on
October 19, 2011.  On October 26, 2011, Serra filed a motion for
a preliminary injunction.  After considering the briefing and
hearing argument, I granted the motion on the condition that a
bond or alternative form of security in the amount of $150,000.00
be secured no later than December 1, 2011.  No security was
obtained and the preliminary injunction order was not entered.

On February 13, 2012, Quantum and Wells Fargo filed their
answer and affirmative defenses.  Wells Fargo additionally
brought three counterclaims against Serra.  First, Wells Fargo
also alleged that Serra breached the mortgage contract and
requested a deficiency judgment, fees, and costs.  Second, Wells
Fargo alleged that Serra was unjustly enriched and requested
damages.  Finally, Wells Fargo alleged that Serra's right to
possess the Property terminated at the foreclosure sale and

requested a judgment for possession and the issuance of an
execution.

Quantum and Wells Fargo have moved for summary judgment on
all claims and counterclaims, which Serra has opposed.  Upon
request of this Court, both parties submitted additional briefing
on the effect of the recently decided *Eaton v. Federal National
Mortgage Association*, 969 N.E. 1118 (Mass. 2012), on the pending
motion.[2]  I have considered all of the parties' submissions as
well as the oral arguments presented at the motion hearing.

## II.  STANDARD OF REVIEW

A movant is entitled to summary judgment when "the movant
shows that there is no genuine dispute as to any material fact
and the movant is entitled to judgment as a matter of law."  Fed.
R. Civ. P. 56(a).  "A dispute is 'genuine' if the evidence about
the fact is such that a reasonable jury could resolve the point
in the favor of the non-moving party.  A fact is 'material' if it
has the potential of determining the outcome of the litigation."
*Baker v. St. Paul Travelers Ins. Co.*, 670 F.3d 119, 125 (1st Cir.
2012) (quoting *Scottsdale Ins. Co. v. Torres*, 561 F.3d 74, 77
(1st Cir. 2009)).

---

[2]  While Quantum's and Wells Fargo's initial motion requested
summary judgment on all claims and counterclaims, the supporting
memorandum did not include argument relating to Count VI of the
Complaint ("Wrongful Foreclosure v. Wells Fargo").  However, in
their supplemental briefing regarding *Eaton v. Federal National
Mortgage Association*, 969 N.E. 1118 (Mass. 2012), the defendants
addressed Count VI in the context of *Eaton*.

Serra "may defeat a summary judgment motion by
demonstrating, through submissions of evidentiary quality, that a
trialworthy issue persists." *Rockwood v. SKF USA Inc.*, No. 11-
1105, 2012 WL 2437685, at *7, -- F.3d --, (1st Cir. June 28,
2012) (quoting *Iverson v. City of Boston*, 452 F.3d 94, 98 (1st
Cir. 2006)).  He "must be able to point to specific, competent
evidence to support his claim." *Id.* (quoting *Soto-Ocasio v. Fed.
Express Corp.*, 150 F.3d 14, 18 (1st Cir. 1998)).  In evaluating
this evidence, I "must construe the record in the light most
favorable to the nonmovant and resolv[e] all reasonable
inferences in that party's favor while safely ignoring conclusory
allegations, improbable inferences, and unsupported speculation."
*Collins v. Univ. of N.H.*, 664 F.3d 8, 14 (1st Cir. 2011)
(alteration in original) (internal quotation marks omitted).

## III.   ANALYSIS

### A.   *The Counts of the Amended Complaint*

#### 1.   Wrongful Foreclosure (Quantum)

In Count I of the Amended Complaint, Serra alleges that
Quantum wrongfully foreclosed on his mortgage.  Quantum contends
it is entitled to judgment on this count because (1) Serra has
produced no evidence to show that Quantum did not have standing
to foreclose at the times that it commenced foreclosure
proceedings and (2) the only foreclosure that was completed was
conducted by Wells Fargo, not Quantum.

Serra speculates that the assignment from Quantum to Wells
Fargo might have been invalid and states that "it remains a
genuine issue of dispute as to whether in fact Quantum played a
role in the wrongful foreclosure of the Serra residence."  Serra
provides no evidence in support of the proposition that the
assignment was invalid.  He fails to explain why an invalid
assignment would result in liability for wrongful foreclosure on
the part of Quantum where the foreclosure was conducted by Wells
Fargo.  Serra offers neither case law in support of the
proposition that the assignor of a mortgage is generally liable
for a wrongful foreclosure conducted by the mortgage's assignee
nor evidence in support of the proposition that something
specific about this transaction would call for such liability in
the instant case.

Serra states that he cannot determine whether Quantum's
counsel's statement that "at no time was Quantum's conduct
unlawful" is true without the benefit of discovery.  At oral
argument he conceded, however, that he has chosen not to take any
discovery and that nothing has prevented him from doing so.  He
also conceded that he has not sought to invoke Federal Rule of
Civil Procedure 56(d) to obtain discovery regarding the summary
judgment contentions.

As a general matter, "trial courts should refrain from
entertaining summary judgment motions until after the parties

have had a sufficient opportunity to conduct necessary discovery." *Velez v. Awning Windows, Inc.*, 375 F.3d 35, 39 (1st Cir. 2004).[3]  However, the mere fact that the Serra would ordinarily have more time to conduct discovery is insufficient reason to deny a motion for summary judgment.  *See Mowbray v. Waste Mgmt. Holdings, Inc.*, 45 F. Supp. 2d 132, 142 (D. Mass. 1999) ("[T]imeliness alone does not guarantee the success of a Rule 56([d]) motion" for discovery on a topic prior to summary judgment proceedings.).  Instead, "[a] party who legitimately requires more time to oppose a motion for summary judgment has a . . . responsibility to make the court aware of its plight. Typically, this is accomplished by way of either a 56([d]) motion or its functional equivalent." *Velez*, 375 F.3d at 39-40. Federal Rule of Civil Procedure 56(d) allows a district court to deny or defer consideration of a motion for summary judgment, allow time to conduct discovery, or issue other appropriate orders where "a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to

---

[3]  Serra repeatedly states that he has been "estopped" from conducting discovery.  Nothing in the record supports such a statement.  No orders have issued preventing discovery from proceeding either before or after Quantum and Wells Fargo filed their motion for summary judgment.  This case was filed in March, 2011, and the Amended Complaint was filed in October, 2011. Serra had the opportunity to conduct discovery in the months that have passed since those pleadings were filed.  Serra's claim of estoppel appears to be without basis, as his concession at oral argument makes clear.

justify its opposition . . . ."  Fed. R. Civ. P. 56(d).

Here, Serra has neither filed a motion pursuant to Federal Rule of Civil Procedure 56(d) nor submitted affidavits or declarations in support of his claim that he requires more time for discovery.  While "[a]n opponent of a summary judgment motion need not follow the exact letter of Rule 56([d]) in order to obtain its benefits . . . the alternative proffer must simulate the rule in important ways."  *Paterson-Leitch Co., Inc. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985, 988 (1st Cir. 1988).  The First Circuit has held that the alternative proffer should (1) be written and timely, (2) "articulate some plausible basis for the party's belief that specified 'discoverable' material facts likely exist," (3) show "some realistic prospect that the facts can be obtained within a reasonable (additional) time, and will, if obtained, suffice to engender an issue both genuine and material," and (4) "demonstrate good cause for failure to have conducted the discovery earlier."  *Id.*  Merely asking for more time in an opposition to a motion for summary judgment, without making the other required showings, is insufficient.  *See Hebert v. Wicklund*, 744 F.2d 218, 221-22 (1st Cir. 1984).

Serra does not satisfy these requirements.  He does not specify any material facts or articulate a plausible basis for a belief that such facts exist.  He hypothesizes that discovery might show that Quantum played some role in the Wells Fargo

foreclosure that would render Quantum liable if the foreclosure was wrongful, but provides no specifics regarding what that role might have been and no plausible basis for the conjecture.[4]

Serra's "motion papers disclose no plausible basis for a belief that [further discovery] would lead to material facts that might defeat summary judgment." *Rivera-Torres v. Rey-Hernandez*, 502 F.3d 7, 12 (1st Cir. 2007). "Speculative conclusions, unanchored in facts, are not sufficient to ground a Rule 56([d]) motion." *Id.* Because Serra neither points to evidence showing the existence of a disputed material fact nor demonstrates that I should deny or defer consideration of the motion for summary judgment under Rule 56(d), I will grant Quantum's motion with regard to Count I.

**2.   G.L. c. 93A (Quantum)**

In Count II of the Amended Complaint, Serra alleges that Quantum's conduct in commencing and pursuing foreclosure proceedings without standing to do so was unfair and deceptive in violation of G.L. c. 93A.  He alleges that these proceedings compelled him to file bankruptcy and caused him to suffer monetary loss, damage to his credit, inconvenience, and emotional

---

[4]  Notably, Serra not only fails to point to such facts in support of his opposition and fails to articulate a plausible belief that such facts exist, but also has failed to assert such facts in his Amended Complaint.  Had Quantum challenged the wrongful foreclosure claim in motion to dismiss practice, it would have been successful at that stage as well.

distress.  To the extent that Court II relates to the December 7, 2011, foreclosure, Quantum contends that summary judgment is warranted with respect to Count II because Count II is titled "G.L. c. 93A v. Quantum--Wrongful Foreclosure" but Quantum did not foreclose on the mortgage.  To the extent that Count II relates to Quantum's acts in commencing foreclosures against Serra, Quantum contends that it is not wrongful for a servicer to take the necessary legal actions to foreclose the mortgage where it is the mortgagee.

With respect to Quantum's role in the foreclosure conducted by Wells Fargo in December, 2011, Count II is dismissed for the reasons I discussed with respect to Count I.  *See supra* Part III.A.1.  Serra has demonstrated no plausible basis for a belief that Quantum is liable for any wrongful foreclosure conducted by Wells Fargo.

With respect to the unfairness or deceit of the foreclosures commenced (but not completed) by Quantum, Serra fails to articulate a basis for a violation pursuant to G.L. c. 93A. Serra makes no argument in his opposition to Quantum's motion for summary judgment in support of the proposition that commencing these foreclosures was unfair or deceitful.  In the Amended Complaint, Serra states that there are five bases for his belief that Quantum had no authority to foreclose, but each of these bases is unsupported in law or in fact.

First, Serra states that "Quantum holds itself out as a loan servicer only, its website proclaiming: 'Quantum Servicing Corporation is a special servicer, dedicated to residential loan management, loss mitigation services, foreclosure and bankruptcy administration and management,['] and in its most recent annual report filed with the Massachusetts Secretary of the Commonwealth, Quantum describes its business as 'loss mitigation and workout services for mtg loans.'"   Serra fails to explain why Quantum's status as a loan servicer precludes it from having the authority to foreclose.   He identifies no case law in support of the proposition that a loan servicer cannot also be a mortgagee.

Second, Serra states that "in or about January, 2010, plaintiff received a notice indicating that the loan was acquired by an entity known as Roosevelt Mortgage Acquisition Company, and identifying Quantum as the servicer."   Serra has not provided a copy of this notice, an affidavit describing its receipt, or any other verified documentation about its existence in support of his opposition to Quantum's motion for summary judgment.   He does not explain whether Roosevelt Mortgage Acquisition Company purported to be the mortgagee or the noteholder or both.   He has failed to establish a genuine issue of material fact.

Third, Serra states that during bankruptcy proceedings, Quantum filed a proof of claim dated March 9, 2010, indicating that Wells Fargo Bank was the holder of the mortgage.   Serra has

15

not provided a copy of this proof of claim or otherwise raised
this argument in support of his opposition to Quantum's motion
for summary judgment.  He does not explain whether Wells Fargo
Bank was represented to be the mortgagee or the noteholder or
both as of March 9, 2010.  He has failed to establish a genuine
issue of material fact.

Fourth, Serra states that "at no time has Quantum been the
holder of the promissory note or a transferee of the note with
the rights of a holder."  The Massachusetts Supreme Judicial
Court recently decided in *Eaton v. Federal National Mortgage
Association*, 969 N.E.2d 1118 (Mass. 2012), that to foreclose
pursuant to G.L. c. 244, § 14, a mortgagee must hold the mortgage
note or be acting on behalf of the noteholder.  *Eaton*, 969 N.E.2d
at 1121.  However, the Supreme Judicial Court held that this
requirement would only be imposed on foreclosure sales regarding
which the notice of sale was sent after June 22, 2012.  *Id.* at
1133.  All of the foreclosure proceedings commenced by Quantum
were noticed prior to June 22, 2012; consequently, whether
Quantum held the note is immaterial.

Fifth, Serra states that "the purported assignment from MERS
to Barclays Bank was invalid because, inter alia, it was executed
without authorization by Equifirst and the individual who signed
the assignment lacked proper authority to do so."  Serra fails to
provide any evidence supporting the asserted lack of authority in

16

his opposition to Quantum's motion for summary judgment. Moreover, Massachusetts law does not require a signatory for an assignor of a mortgage to do more to establish her authority than (1) execute the assignment "before a notary public, justice of the peace or other officer entitled by law to acknowledge instruments" and (2) "purport[] to hold the position of president, vice president, treasurer, clerk, secretary, cashier, loan representative, principal, investment, mortgage or other officer, agent, asset manager, or other similar office or position, including assistant to any such office or position, of the entity holding such mortgage, or otherwise purporting to be an authorized signatory for such entity, or acting under such power of attorney on behalf of such entity, acting in its own capacity or as a general partner or co-venturer of the entity holding such mortgage . . . ." G.L. c. 183, § 54B.  The signatory appears to have met those requirements.  Serra has failed to establish a genuine issue of material fact.

Serra does not establish any genuine issue of fact material to whether Quantum violated G.L. c. 93A through conduct related to either the December, 2011, foreclosure conducted by Wells Fargo or the earlier foreclosure proceedings commenced by

Quantum.[5]  Consequently, I will grant Quantum's motion with
regard to Count II.

### 3.    Structurally Unfair Loan in Violation of G.L. c. 93A

In Count III of the Amended Complaint, Serra alleges that
the loan was a sub-prime adjustable rate product that was
structurally unfair in violation of G.L. c. 93A, § 2, because it
was reasonably likely that the loan was doomed to foreclosure.
The Amended Complaint states that the loan had the following
characteristics: (1) an introductory period of three years or
less; (2) an introductory interest rate that was substantially
below the fully-indexed rate; (3) mortgage, tax, and insurance
payments that, at the fully indexed rate, would be at least 50%
of the mortgagor's monthly gross income; (4) a loan-to-value
ratio of 100% or nearly 100%; and (5) a substantial balloon
payment at the loan's maturity date.  Quantum and Wells Fargo
contend that they are not liable for the alleged G.L. c. 93A
violation because each is merely an assignee, and not the
originator, of the mortgage and loan.

The case law supports the argument made by Quantum and Wells

---

[5]  In his opposition, Serra notes that "should this Court find
that the Plaintiff is entitled to rescind his mortgage, under
G.L. c. 140D § 34, this would be an automatic violation of G.L.
c. 93A."  However, the Amended Complaint only alleges that
Quantum violated G.L. c. 93A through "Wrongful Foreclosure" and
by "commencing and pursuing a foreclosure proceeding against
plaintiff without standing or proper authority to do so . . . ."
Count II does not relate to any alleged violation of G.L.
c. 140D.

Fargo.  The Massachusetts Supreme Judicial Court has held that
"[w]hile [a debtor] may well have a valid c. 93A claim against [a
loan originator], [the Court] rejects the claim that such
liability should be extended to the [originator's]
assignee . . . ." *Ford Motor Credit Co. v. Morgan*, 536 N.E.2d
587, 591 (Mass. 1989).  Other courts have applied this holding to
G.L. c. 93A claims made against mortgage assignees in particular.
*See McBride v. Am. Home. Mortg. Servicing Inc.*, CIV.A 11-10998-
RWZ, 2012 WL 931247, at *3-4 (D. Mass. Mar. 19, 2012) (dismissing
G.L. c. 93A claim brought against mortgage assignee); *In re Mae*,
460 B.R. 1, 4 (Bankr. D. Mass. 2011) (same); *In re Riga*, Bankr.
No. 10-11415-FJB, 2011 WL 1115084, at *1 (Bankr. D. Mass. Mar.
25, 2011) (same); *McKensi v. Bank of Am., N.A.*, CIV.A 09-11940-
JGD, 2010 WL 3781841, at *3 (D. Mass. Sept. 22, 2010) (same).

     Serra does not argue to the contrary.  Instead, he states in
his opposition that he "relies on his pleadings regarding this
Count, as he has not been given the benefit of discovery on this
or any other claim in this matter."  Serra's statements regarding
discovery do not warrant deferral or denial of the defendants'
motion for summary judgment because Serra has not satisfied the
requirements of Rule 56(d) in either form or substance.  He has
neither "articulate[d] some plausible basis for [his] belief that
specified 'discoverable' material facts likely exist" nor shown
"some realistic prospect that the facts can be obtained within a

reasonable (additional) time, and will, if obtained, suffice to engender an issue both genuine and material." *Paterson-Leitch Co.*, 840 F.2d at 988.  Consequently, I will grant Quantum's and Wells Fargo's motion with regard to Count III.

### 4.    Failure to Determine That the Loan was in Serra's Interest

In Count IV of the Amended Complaint, Serra alleges that Equifirst knowingly made the loan despite the fact that it was a refinance loan and was not in Serra's interest.  Serra contends that such conduct violates 209 CMR 53.02 *et seq*.  The regulations cited by Serra are authorized by and more fully describe the prohibition on such transactions contained in G.L. c. 183, § 28C.

Quantum and Wells Fargo argue that assignees are not liable for any violation under G.L. c. 183, § 28C.  The statute does not explicitly provide for assignee liability but instead states that "[a] *lender* shall not knowingly make a home loan if the home loan pays off all or part of an existing home loan that was consummated within the prior 60 months or other debt of the borrower, unless the refinancing is in the borrower's interest." G.L. c. 183, § 28C (emphasis added).  To the extent that Serra might argue that common law contract liability would extend such liability to an assignee, *Ford Motor Credit Co.* holds otherwise. *See Ford Motor Credit Co.*, 536 N.E.2d at 591.  Serra identifies no cases, and this Court is unaware of any, that apply G.L. c. 183, § 28C, liability to assignees.

Serra makes no argument in opposition.   Instead, he merely reiterates that he "relies on his pleadings regarding this Count, as he has not been given the benefit of discovery on this or any other claim in this matter."   He does not specify what facts could create a genuine dispute material to the viability of the claim and he states no plausible basis for believing that such facts exist.   Consequently, I will grant the defendants' motion with regard to Count IV.

### 5.   G.L. c. 140D

In Count V of the Amended Complaint, Serra alleges that Equifirst understated the finance charge in the disclosures it made at the loan's origination.   Serra alleges that he provided written notice to Quantum in October, 2010, that he was exercising his right of rescission on the basis of that understatement and that Quantum did not respond.   Serra contends that he has a right to rescind and to damages, costs, and attorney fees pursuant to the Massachusetts Credit Cost Disclosure Act, G.L. c. 140D ("the MCCCDA") and 209 CMR 32.23(1)(c).[6]   Quantum and Wells Fargo contend that Serra's claim

---

[6]   Unlike G.L. c. 183, § 28C, the MCCCDA explicitly provides for rescission claims against assignees of the mortgage where "the violation for which such action or proceeding is brought is apparent on the face of the disclosure statement . . . ."   G.L. c. 140D, § 33(a).   *See Belini v. Washington Mutual Bank, FA*, 412 F.3d 17, 28 (1st Cir. 2005) ("[A] debtor can seek rescission against an assignee as though that assignee were the original creditor.").

of rescission must fail because he has produced no evidence indicating his ability to tender the loan proceeds.

The MCCCDA is to be construed in accordance with the federal Truth in Lending Act ("TILA"). *McKenna v. First Horizon Home Loan Corp.*, 475 F.3d 418, 422 (1st Cir. 2007);[7] *Mayo v. Key Fin. Servs., Inc.*, 678 N.E.2d 1311, 1313 (Mass. 1997). The First Circuit has stated in the context of the TILA that "in contrast

---

[7] Serra objects to Wells Fargo's citation of *McKenna v. First Horizon Home Loan Corp.*, 475 F.3d 418 (1st Cir. 2007) in support of the proposition that the MCCCDA should be construed in accordance with the federal Truth in Lending Act because (1) *McKenna* is a federal case and (2) *McKenna* considered rescission rights in the context of class actions in particular. These objections are baseless for a number of reasons.

First, while a district court sitting in diversity makes its "best guess" as to state law "[a]bsent a decision by the state's highest court," *Liberty Mut. Ins. Co. v. Metro. Life Ins. Co.*, 260 F.3d 54, 65 (1st Cir. 2001), the district court must defer to the court of appeals in its circuit as to what that "best guess" should be because the courts of appeal provide binding precedent for the district courts.

Second, nothing in *McKenna* limited the holding that "the MCCCDA should be construed in accordance with the TILA," *McKenna*, 475 F.3d at 422, to the class action context. Indeed, only after declaring this principle of construction did the First Circuit "turn . . . to the operation of these statutes in the class-action context." *Id.*

Third, the Supreme Judicial Court has itself held that, in the context of the MCCCDA and the TILA, "[f]ederal court decisions are instructive in construing parallel State statutes and State regulations," *Mayo v. Key Financial Servs., Inc.*, 678 N.E.2d 1311, 1313 (Mass. 1997). In fact, the First Circuit in *McKenna* cited the Supreme Judicial Court's decision in *Mayo*. *See McKenna*, 475 F.3d at 422.

Fourth, Serra cites no case law in support of the proposition that the MCCCDA should be interpreted differently than the TILA (with the exception of the four-year limitations period that the MCCCDA imposes on rescission as compared to the three-year limitations period imposed by the TILA, a matter which is not at issue here).

to common law rescission, the borrower need not first return the
loan proceeds received under the agreement to effect a
rescission." *Large v. Conseco Fin. Servicing Corp.* 292 F.3d 49,
55 (1st Cir. 2002).  The same rule applies in the context of the
MCCCDA: Serra need not have first returned the loan proceeds
received to effect a rescission.  *See Wells Fargo Bank, N.A. v.
Jaaskelainen*, 407 B.R. 449, 455 (D. Mass. 2009) ("[U]nder
the . . . MCCDA, the creditor must perform first and terminate
any security interest it has as a result of the transaction
before the borrower is required to return any loan proceeds.").
To the extent that Quantum and Wells Fargo contend that the
statute requires tender prior to or concurrent with rescission,
the statute and the case law foreclose this argument.

A more complicated issue is whether this Court can, or
should, modify the ordinary statutory process to condition
rescission on tender by the borrower.  Courts within this
district have split on the issue.  *Compare Jaaskelainen*, 407 B.R.
at 459-62, *with In re Cromwell*, 461 B.R. 99, 131-36 (Bankr. D.
Mass. 2011), *and In re Giza*, 428 B.R. 266, 273-76 (Bankr. D.
Mass. 2010).  Although none of those courts have cited the
decision, the First Circuit has also addressed the issue in the
context of the TILA, albeit in dicta.  In *Belini v. Washington
Mutual Bank, FA*, 412 F.3d 17, 28 (1st Cir. 2005), the First
Circuit stated:

23

> After the creditor has carried out these obligations, the debtor has her own obligations. "Upon performance of the creditor's obligations under this section, the [debtor] shall tender the property to the creditor . . . ." 15 U.S.C. § 1635. As we noted in *Large v. Conseco Fin. Servicing Corp.*, 292 F.3d 49, 55-56 (1st Cir. 2002), TILA alters common law rescission by forcing the creditor to tender before the debtor, although *the court has the power under section 1635(b) to change these procedures where appropriate.*

*Belini*, 412 F.3d at 25 n.3 (emphasis added). It is not clear if the First Circuit would interpret the MCCCDA similarly because the Code of Massachusetts Regulations provides an arguable basis for holding that, under the law applicable in the Commonwealth, a court cannot place conditions upon rescission. *See In re Cromwell*, 461 B.R. at 131-36; *In re Giza*, 428 B.R. at 273-76.

The defendants would have me modify the process to impose a contingency of tender here.[8] I find the condition of tender is beside the point in this case at this stage. Rescission, whether conditioned by tender or not, is no longer available. After Serra first advanced his claim seeking rescission, the Property

---

[8] I note Quantum and Wells Fargo have effectively established as a matter of law that Serra cannot tender the loan proceeds. In support of the proposition that Serra cannot do so, Quantum and Wells Fargo cite a letter from counsel for Quantum to counsel for Serra inquiring if he could "please advise if [his] client has the financial ability to tender the loan obligation . . . ." Apparently no reply was sent by Serra's counsel. This is effectively an admission by Serra that he could not tender the loan obligation. It was corroborated by Serra's failure to post a bond as a condition of obtaining a preliminary injunction. In the absence of countervailing evidence, this record is sufficient to establish as a matter of law that Serra could not tender the loan proceeds.

was sold at foreclosure auction.[9]   Serra's right of rescission expired due to this sale of the Property.   *See* G.L. c. 140D, § 10(f) ("An obligor's right of rescission shall expire . . . upon the sale of the property . . . .").

A foreclosure sale extinguishes the right of rescission under G.L. c. 140D.   *In re Hall*, 188 B.R. 476, 484 (Bankr. D. Mass 1995); *Snowden v. Chase Manhattan Mortg. Corp.*, No. 030001, 2004 WL 1194656, at *3 n.5 (Mass. Super. Apr. 27, 2004); *Khan v. Dime Sav. Bank of New York, FSB*, No. 931345E, 1993 WL 818711, at *4 (Mass. Super. Ct. Nov. 15, 1993).   This holding is in accordance with the case law on the subject with regard to the expiration of the right to rescind pursuant to the TILA.   *See Takushi v. BAC Home Loans Servicing, LP*, 814 F. Supp. 2d 1073, 1079-84 (D. Haw. 2011); *Benemie v. Countrywide Home Loans, Inc.*, No. CV 09-7870-GHK, 2010 WL 4228339, at *1 (C.D. Cal. Oct. 26, 2010).   It is also in accordance with the Official Staff Commentary to Regulation Z.   *See* Official Staff Commentary to Reg. Z, § 226.23(a)(3) ("A sale or transfer of the property need not be voluntary to terminate the right to rescind.   For example, a foreclosure sale would terminate an unexpired right to rescind.").

Although Serra had issued a rescission notice to Quantum

---

[9]   Serra contends that the foreclosure was wrongful and is void. However, Serra provides no compelling argument in support of that contention.   *See infra* Part III.A.6.

prior to the foreclosure sale, that step did not effect a rescission that might render the foreclosure sale void.  The First Circuit has held that rescission pursuant to the TILA is not automatic on dispatch of a rescission notice.  *See Large*, 292 F.3d at 55-56; *Belini*, 412 F.3d at 25 n.3.  Courts within this district have applied this interpretation to rescission pursuant to the MCCCDA.  *See, e.g., In re Giza*, 428 B.R. at 274; *Jaaskelainen*, 407 B.R. at 455.  Instead of automatic rescission, "[i]f a lender disputes a borrower's purported right to rescind, the designated decision maker . . . must decide whether the conditions for rescission have been met.  Until such decision is made, the [borrower has] only advanced a claim seeking rescission" and the loan "agreement remains in force . . . ." *Large*, 292 F.3d at 55.  Here, the designated decision maker (in this case, this Court) had not determined whether the conditions for rescission were met. Consequently, rescission had not been effected prior to the foreclosure sale and the mortgage agreement remained in force until Wells Fargo foreclosed.

Serra's right to rescind pursuant to G.L. c. 140D has been extinguished.  However, I do not grant Quantum and Wells Fargo summary judgment with respect to Count V in its entirety.  Count V requests relief not only in the form of rescission but also in the form of damages, costs, and attorney fees.

The First Circuit has held that a failure to respond

appropriately to a notice of rescission pursuant to the TILA violates a requirement of the TILA and renders the lender liable for damages.  *See Belini*, 412 F.3d at 24-27.  G.L. c. 140D contains statutory provisions parallel to the TILA provisions at issue in *Belini*.  These provisions state that "[i]n any action in which it is determined that a creditor has violated" the borrower's rescission rights, "the court may award relief . . . not relating to the right to rescind," G.L. c. 140D, § 10(g), and that "any creditor who fails to comply with any requirement imposed under this chapter or any rule or regulation issued thereunder including any requirement [related to rescission] under section ten with respect to any person is liable" for actual damages, twice the amount of any finance charge in connection with the transaction, costs, and attorney fees, G.L. c. 140D, § 32(a).

Quantum and Wells Fargo offer no argument supporting the contention that Serra's request for damages, costs, and fees should be subject to summary judgment.  Consequently, I will deny Quantum's and Wells Fargo's motion with regard to Serra's requests in Count V for that form of relief and require further briefing from the parties on that issue.

### 6.   Wrongful Foreclosure (Wells Fargo)

In Count VI of the Amended Complaint, Serra alleges that Wells Fargo is not the holder of the note secured by the mortgage

on the Property.  Serra contends that consequently Wells Fargo
lacks authority to foreclose.  After the initial briefing was
submitted regarding Wells Fargo's motion for summary judgment,
the Massachusetts Supreme Judicial Court decided *Eaton v. Federal
National Mortgage Association*, 969 N.E.2d 1118 (Mass. 2012), in
which it addressed precisely this issue.

In *Eaton*, the Supreme Judicial Court "construe[d] the term
'mortgagee' in G.L. c. 244, § 14 [the statute governing
foreclosure under the power of sale], to mean a mortgagee who
also holds the underlying mortgage note."  *Eaton*, 969 N.E.2d at
1129.  The Supreme Judicial Court held that the foreclosure sale
must therefore be conducted by the note holder or by one who acts
as an authorized agent of the note holder.  *Id.* at 1130.
However, the Supreme Judicial Court exercised its discretion to
apply the *Eaton* rule prospectively only, "to mortgage foreclosure
sales for which the mandatory notice of sale [is] given after the
date of [the *Eaton*] opinion" of June 22, 2012.  *Id.* at 1333.

The foreclosure at issue was noticed prior to June 22, 2012.
Consequently, whether Wells Fargo held the note does not affect
the validity of the foreclosure sale.  *See Woods v. Wells Fargo
Bank, N.A.*, C.A. No. 11-cv-30216-MAP, 2012 WL 2577580, at *2 (D.
Mass. July 3, 2012) ("[A]s a pre-*Eaton* mortgagee, [the bank]
would be entitled to foreclose even without proof that it was
also the note holder or its agent.").  Serra cannot point to a

28

fact material to any genuine dispute.  For this reason, I will grant summary judgment with regard to Count VI.

I note that in the course of his submissions, Serra argues that the foreclosure sale conducted by Wells Fargo was invalid for a host of other reasons.  The Amended Complaint itself does not identify any of these reasons as grounds for the wrongful foreclosure claim.  Nevertheless, for the sake of completeness, I will briefly address each of these additional issues as developed in the submissions in the case apart from the operative pleading.

First, Serra contends that the sale was invalid because assignments from MERS are invalid and consequently Wells Fargo did not have authority to foreclose pursuant to G.L. c. 244, § 14.  This contention is incorrect as a matter of law for the reasons described in the decision I issued yesterday in *Butler v. Deutsche Bank Trust Company Americas as Trustee for RALI 2007 QS3*, Civil Action No. 12-10337-DPW, also litigated before me by Serra's counsel.[10]  In short, many decisions in this district have held that MERS may validly assign a mortgage.  *See, e.g., Culhane v. Aurora Loan Servs. of Neb.*, 826 F. Supp. 2d 352, 367-78 (D. Mass. 2011); *Rosa v. Mortg. Elec. Sys., Inc.*, 821 F. Supp. 2d 423, 429-30 (D. Mass. 2011); *In re Marron*, 455 B.R. 1, 5-8 (Bankr. D. Mass 2011); *Aliberti v. GMAC Mortg., LLC*, 779 F. Supp.

---

[10]   In *Butler v. Deutsche Bank Trust Company Americas as Trustee for RALI 2007 QS3*, Civil Action No. 12-10337-DPW, counsel for Serra more completely briefed the issue.

2d 242, 249 (D. Mass. 2011); *In re Lopez*, 446 B.R. 12, 18-19 (Bankr. D. Mass. 2011).  I find these decisions persuasive and reject the contention that Wells Fargo wrongfully foreclosed due to the role of MERS as assignor of the mortgage.

Second, Serra contends that the sale was invalid because "it has yet to be determined" whether the assignment to Wells Fargo was "in compliance with the controlling terms of the foreclosing Trust's Governing Documents."  Even if Serra were permitted discovery regarding the trust's governing documents, which he describes as the Pooling and Servicing Agreement and the Prospectus Supplement, he has not shown "some realistic prospect that" the facts therein "will, if obtained, suffice to engender an issue both genuine and material." *Paterson-Leitch Co.,* 840 F.2d at 988.  Serra has presented no argument in support of the contention that if the assignment did violate the trust's governing documents, this would render the assignment invalid.

More fundamentally, a number of decisions in this district have held that a mortgagor does not have standing to challenge a foreclosure on the basis of the non-compliance of an assignment with the provisions of the Pooling and Servicing Agreement governing the foreclosing trust.  *See Juarez v. U.S. Bank Nat. Ass'n*, Civil Action No. 11-10318-DJC, 2011 WL 5330465, at *4 (D. Mass. Nov. 4, 2011); *In re Correia*, 452 B.R. 319, 324 (1st Cir. BAP 2011) (per curiam); *In re Almeida*, 417 B.R. 140, 149 (Bankr.

D. Mass. 2009); *In re Samuels*, 415 B.R. 8, 22 (Bankr. D. Mass. 2009). *Cf. In re Lacey*, Bankr. No. 10-19903-JNF, 2012 WL 2872050, at *17 (Bankr. D. Mass. 2012) (distinguishing between a challenge to a foreclosure based on an invalid assignment as a general proposition and a challenge to a foreclosure based on an assignment's violation of the PSA governing the trust); *In re Bailey*, 468 B.R. 464, 474 (Bankr. D. Mass. 2012) (same). I agree with these decisions for the reasons described in *Butler*. Serra has not shown that additional discovery on the issue is warranted on this topic pursuant to Federal Rule of Civil Procedure 56(d).

Third, Serra points to the statement in Wells Fargo's and Quantum's Memorandum of Law in Support of their Motion for Summary Judgment that "[a]t Wells Fargo's expense, the Plaintiff has been unjustly enriched since 2008." He contends that this statement is sufficient to create a genuine dispute of material fact "with regards to who precisely was the 'holder' of the Serra mortgage at various points in time." I disagree.

Serra fails to distinguish between the mortgage and the note. Wells Fargo's contention regarding unjust enrichment relates to, inter alia, "the delinquent amount due under the loan obligation." Wells Fargo might well have been the note holder, suffering a delinquency at the hands of Serra, since 2008; this does not establish who was the mortgagee at that time. *See U.S. Bank. Nat. Ass'n v. Ibanez*, 941 N.E.2d 40, 53-54 (Mass. 2011)

("In Massachusetts, where a note has been assigned but there is no written assignment of the mortgage underlying the note, the assignment of the note does not carry with it the assignment of the mortgage."). Consequently, any admission made with regard to the timing of Wells Fargo's ownership of the note does not impact the validity of the foreclosure sale. *See Eaton*, 969 N.E.2d at 1333 (holding that the requirement that the mortgagee possess the note in order to validly foreclose applies prospectively only).

Fourth, Serra contends that Sutton Funding, LLC, (and not Wells Fargo) filed the complaint pursuant to the Servicemembers Civil Relief Act at the Land Court and that consequently Wells Fargo did not foreclose in "good faith" and with "reasonable diligence." Serra acknowledges that "Massachusetts foreclosure statutes do not require a Judgment from the Servicemembers action," but alleges that REBA Title Standard 7 "states that in order to convey marketable title the foreclosing party must obtain a Judgment in [a] Servicemembers[] action." Serra argues that Wells Fargo's failure to convey marketable title at the foreclosure sale would constitute a failure to foreclose in good faith and with reasonable diligence. He suggests that he has raised a material dispute of genuine fact. I disagree.

As a preliminary matter, Serra fails to provide a copy of REBA Title Standard 7 although it is the evidentiary basis for his argument. A party must "cit[e] to particular parts of

materials in the record, including depositions, documents,
electronically stored information, affidavits or declarations,
stipulations (including those made for purposes of the motion
only), admissions, interrogatory answers, or other materials" to
support a factual assertion.  Fed. R. Civ. P. 56(c)(1)(a).  Serra
fails to do so, and his factual assertion is unsupported.  Given
the failure to provide a copy of the REBA Title Standard it is
impossible to evaluate Serra's claim that the Standard states or
implies that the same party must file the Servicemembers Civil
Relief Act Complaint and exercise the power of sale.

       In any event, to the extent that the REBA Title Standard
does state or imply that the same entity must file the
Servicemembers Civil Relief Act Complaint and exercise the power
of sale, it is in clear conflict with the law in Massachusetts.
The Supreme Judicial Court has stated that the Servicemembers
Civil Relief Act:

>       simply establishes procedures whereby mortgagees, in
> addition to taking all steps necessary to foreclose, can
> make certain that there will be no cloud on the title
> following the foreclosure as a result of an interested party
> having been in, or just released from, military
> service . . . .

*Beaton v. Land Court*, 326 N.E.2d 302, 305 (Mass. 1975).  The

Court held:

>       If a foreclosure were otherwise properly made, failure to
> comply with the [Servicemembers' Civil Relief] Act would not
> render the foreclosure invalid as to anyone not entitled to
> the protection of that act.

*Id*.  So long as the mortgagor is not entitled to the protection

of the Act--a fact determined by the Servicemembers action regardless of the identity of the filing party--the foreclosure will not be invalid under Massachusetts law on the basis of the Act and there will be no cloud on the title. *See Akar v. Fed. Nat. Mortg. Ass'n*, 845 F. Supp. 2d 381, 395-97 (D. Mass. Feb. 8, 2012) (holding that where foreclosing entity files the Servicemembers action before it is assigned the mortgage, such action does not render the foreclosure sale unlawful).

Serra's contentions might have some weight if there had been *no* Servicemembers action whatsoever. While failure to bring a Servicemembers action does not automatically invalidate a sale, it might affect the marketability of title due to concern that the mortgagor could have been entitled to the protections of the Act. This, in turn, might affect prospective buyers' confidence in the property and the price for which the property is sold. Here, however, there was a Servicemembers action, and a judgment issued that Serra was not entitled to the protections of the Act. I fail to see how the identity of the filing party could affect marketable title. In light of Serra's failure to provide a copy of REBA Title Standard 7, and in light of the case law, I find that Serra has failed to establish a genuine dispute of material fact regarding the validity of the foreclosure sale based on Wells Fargo's failure to file a Servicemembers Complaint in its own name.

34

Finally, Serra's opposition papers suggest that these proceedings must be unfair because "the record is ***littered*** with a multitude of threatened foreclosure auctions as against the Plaintiff." (emphasis in original).  The record does not demonstrate any deceit or unfairness in Quantum's serial commencement of foreclosure proceedings; instead, it shows that Quantum was required to cancel multiple foreclosure sales and start anew because of Serra's repeated recourse to the Bankruptcy Court followed by his failure to prosecute those actions.  On this record, I cannot hold that a reasonable jury could find serial foreclosure proceedings necessitated by Serra's repeated and unsuccessful recourse to bankruptcy process somehow reflects a failure of Wells Fargo to foreclose in good faith.

Serra fails to raise a genuine issue of material fact either in relation to the claim as pleaded (which addresses only the validity of the foreclosure auction in the context of Wells Fargo's questionable status as note holder) or in consideration of the additional arguments spread across Serra's memorandum and his response to Quantum's and Wells Fargo's statements of undisputed fact.  Consequently, I will grant summary judgment with regard to Count VI of the Amended Complaint.

## B.  *Counterclaims*

### 1.  Breach of Contract

In Count I of its Counterclaims, Wells Fargo alleges that Serra defaulted on the loan, that Wells Fargo published notice of

the foreclosure sale once in each of three successive weeks, and that notice of the sale and intention to collect a deficiency was sent to the mortgagor at least twenty one days prior to the date of sale.  Wells Fargo contends that it is due the deficiency and asks for summary judgment.  Serra contends that there are two issues of material fact in genuine dispute.

First, Serra argues that "[i]t remains an issue of material dispute whether the Defendant Trust is the possessor of the contractual right of the power of sale that Mr. Serra only Granted to Equifirst."  Serra complains that he has not been able to conduct discovery on this matter.  However, Serra fails to articulate a "plausible basis for a belief that [further discovery] would lead to material facts that might defeat summary judgment."  *Rivera-Torres*, 502 F.3d at 12.  He does not articulate the specific facts that he seeks to discover, nor why they would be material.  He does not explain the theory that he wishes to pursue by means of additional discovery.  To the extent that he relies on the theories that the assignment was invalid due to (1) the role of MERS as assignor, (2) the assignment's non-compliance with the PSA, or (3) Wells Fargo's request for damages due to unjust enrichment dating from 2008, I have rejected those theories for the reasons explained above regarding the Amended Complaint.  *See supra* Part III.A.6.

Second, Serra argues that Wells Fargo did not obtain a Judgment under the Servicemembers Civil Relief Act in

contravention of REBA Title Standard 7, potentially creating unmarketable title.  Serra contends that this is evidence that Wells Fargo did not act in good faith during the foreclosure sale in a manner that might render the sale void.  I have also rejected this argument for the reasons explained above in connection with the Amended Complaint.  *See supra* Part III.A.6.

Serra additionally challenges the accuracy of the costs and fees requested, as well as the litigation fees and costs alleged. The affidavits submitted by Wells Fargo include only "approximate" litigation fees and expenses.  At the hearing on the summary judgment matter, I directed further submissions regarding such costs, fees, and litigation expenses. Consequently, I will deny summary judgment with respect to Counterclaim I pending resolution of this discrete matter.

### 2.    Unjust Enrichment

In Count II of the Counterclaims, Wells Fargo alleges that Serra was unjustly enriched by receiving the benefit of the bargain of the loan at the expense of Wells Fargo.  It asks for summary judgment on this Count.

Serra contends that Wells Fargo's statement that "[a]t Wells Fargo's expense, the Plaintiff has been unjustly enriched since 2008" somehow "creates more issues in dispute than it purportedly answers" because it conflicts with the mortgage assignment date. As I discussed above, *see supra* Part III.A.6, Serra fails to

distinguish between the mortgage and the note.  The statement creates no inconsistency in the record.

Serra also challenges the accuracy of the fees and expenses asserted by Wells Fargo.  For the reasons described above, *see supra* Part III.B.1, I have denied summary judgment and required further submissions on this matter.

Although neither party raises the issue, I must additionally express my reservations about the appropriateness of the use of an unjust enrichment claim to collect a deficiency after a foreclosure sale.  In Massachusetts, "[u]njust enrichment provides an equitable stopgap for occasional inadequacies in contractual remedies at law by mandating that a person who has been unjustly enriched at the expense of another is required to make restitution to the other."  *Mass. Eye and Ear Infirmary v. QLT Phototherapeutics, Inc.*, 412 F.3d 215, 234 (1st Cir. 2005). Here, no "equitable stopgap" is necessary where Wells Fargo has a remedy at law and has brought, in Counterclaim I, an action for a deficiency to attain that remedy.  Because Serra has not moved for summary judgment on Counterclaim II, I have directed further submissions regarding this issue pursuant to Federal Rule of Civil Procedure 56(f)(1).

### 3.  Possession

Wells Fargo alleges that it has complied with the requirements of G.L. c. 244, § 14; conducted a foreclosure sale; and sent a three day notice to quit on March 12, 2012.  In Count

III of the Counterclaims, Wells Fargo requests possession and an execution to issue forthwith.  Serra contends that as a condition precedent to "possession" Wells Fargo would have to establish its strict adherence with Massachusetts non-judicial foreclosure statutes as well as with the terms of the trust's governing documents.

There is no question that Wells Fargo must show strict adherence to the Massachusetts statutory foreclosure requirements in order demonstrate its right to possession. *Bank of N.Y. v. Bailey*, 951 N.E.2d 331, 334 (Mass. 2011) ("In a[n] . . . action for possession after foreclosure by sale, the plaintiff is required to make a prima facie showing that it obtained a deed to the property at issue and that the deed and affidavit of sale, showing compliance with statutory foreclosure requirements, were recorded."); *Sheehan Constr. Co. v. Dudley*, 12 N.E.2d 182, 183 (Mass. 1937) (holding that in a summary process action brought by a purchaser at a foreclosure sale "it is incumbent upon such purchaser to establish his right of possession.  The legal title in those circumstances plainly may be put in issue.").  It has done so on this record.

Wells Fargo has established, via production of the assignments, that it was the record mortgagee at the time of foreclosure.  It has established, via affidavits, that it conducted the foreclosure sale in accordance with G.L. c. 244, § 14.  I have rejected Serra's contention that an assignment in

violation of the trust's governing documents is void and have addressed the contentions that Serra makes elsewhere with regard to the validity of the foreclosure sale.  *See supra* Part III.A.6. Serra does not raise any other specific challenges regarding Wells Fargo's compliance with the Massachusetts foreclosure statutes in the context of Counterclaim III.  Consequently, I will grant summary judgment with regard to Count III of the Counterclaims.

## IV.   CONCLUSION

For the reasons set forth above, I GRANT the Defendant's Motion for Summary Judgment (Dkt. No. 21), except to the extent that the parties have been directed to provide further submissions with respect to (A) Count V, regarding Serra's purported damages for the alleged failure to comply with G.L. c. 140D, *see supra* Part III.A.5.; (B) Counterclaim I, regarding Wells Fargo's litigation fees and costs arising from the foreclosure sale, *see supra* Part III.B.1; and C) Counterclaim II, regarding Wells Fargo's unjust enrichment cause of action, *see supra* Part III.B.2.


*/s/ Douglas P. Woodlock*
DOUGLAS P. WOODLOCK
UNITED STATES DISTRICT JUDGE